UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Case No. 23-cr-69-CKK |
| | : | |
| **ISAAC THOMAS,** | : | |
| **CHRISTINA LEGROS** | : | |
| Defendants. | : | |

## GOVERNMENT'S STATUS UPDATE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this status update.

On January 6, 2021, a Joint Session of Congress met to certify the 2020 Presidential Election. A restricted perimeter was established outside of the Capitol Building to keep members of the public from entry. On the day this process was scheduled to occur, Isaac Thomas and Christina Legros appeared at that perimeter after having traveled from Michigan together. *See Figure 1*. The two—joined by thousands of others—would become part of the initial violent breach of the restricted perimeter at the Pennsylvania Walkway entrance near the Peace Monument.

After this initial breach, the two stood at the impromptu police line hastily formed to prevent entry into the building itself. Both defendants joined their fellow rioters in chanting and shouting until Defendant Thomas yelled: ". . . I will smack you upside your head with this pole!". Defendant Thomas, recorded by Defendant Legros, would use the flagpole he brought to protest, to assault fully uniformed police officers of the United States Capitol Police.

 Following these assaults, the two pushed up the Northwest Steps and entered the Capitol Building through the Senate Wing Door. While inside the building the two separated. However,



*Figure 1*:   Defendants circled in yellow,
"AREA CLOSED" sign circled in red.

communications between the two, as well as Defendant Legros's movements inside the building suggest that separation was not their intent. The two eventually left the building—through two separate doors at two different times—and met back up at their shared hotel room. Both then stayed in the District of Columbia while trying to find the car they used to travel here. When they were unable to find the vehicle timely, the two obtained tickets on a Greyhound bus back to travel back to Michigan.

For their actions on January 6, 2021, each were indicted on charges of violating 18 U.S.C. § 1752(a)(1) (Entering and Remaining in a Restricted Area), 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Area), 40 U.S.C. § 5104I(2)(D) (Disorderly and Disruptive Conduct in a Capitol Building), and 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building). ECF 11. Additionally, Defendant Thomas was indicted on charges of violating 18 U.S.C. § 111(a) and (b) (Assaulting, Resisting, or Impeding Officers using a Dangerous Weapon), 18 U.S.C. § 1512(c)(2) (Obstruction of an Official Proceeding), 18 U.S.C. 231(a)(3) (Civil Disorder), 18 U.S.C. § 1752(a)(4) and (b)(1)(A) (Engaging in Physical Violence

in a Restricted Area with a Dangerous Weapon), and 40 U.S.C. § 5104(e)(2)(F) (Act of Physical Violence in a Capitol Building). ECF 11.

Under Fed. R. Crim. Pro. Rule 8: "The indictment . . . may charge 2 or more defendants if they are alleged to have participated . . . *in the same series of acts or transactions*, constituting an offense or offenses." (emphasis added). The Rule further provides: "All defendants need not be charged in each count."

The government alleges that both defendants travelled from Flint, Michigan, to Washington D.C. together. At trial, the government intends to present evidence of an incident that occurred between the defendants and police at a hotel in Ohio during their trip under Fed. R. Evid. 404(b). The incident involves the two being asked to leave but refusing to do so. Eventually police arrive, but still the two refuse to leave. This evidence will be used to prove knowledge, absence of mistake, and lack of accident. A further explication will be provided within the government's 404(b) notice.

This shared trip continued from Ohio to D.C., before then going to New York City for the New Years Celebration, then the two again travelled to Washington D.C. for the "stop the steal" rally on January 6. Following their shared entry into the Capitol Building itself, the two separated; however, they shared a hotel room and travelled back to Michigan together.

Although the two are charged in the same indictment and most of the evidence against each defendant would be mutually admissible at a single trial, the indictment reflects the criminal actions each took individually on January 6. Both were disorderly and disruptive, but Defendant Thomas himself was also violent and intended to corruptly obstruct Congress. Incidentally, the same evidence will be used to prove "the same series of acts" that would show each individual's criminality. The two are properly joined.

**Defendant Legros**

Since Defendant Legros's arrest she has had a medical event that has caused a slowdown in her case. The government has had an opportunity to review the records within ECF 63 that cover both her physical and mental health. The records show the severity of the medical event in March 2023; however, they also show the improvement Defendant Legros has experienced in her condition. The government is hopeful that the current implementation target of January 27, 2024, will provide Defendant Legros with continued improvement to allow her to participate in her defense and for this case to move forward.[1] Although Defendant Legros was arraigned on the complaint, she has not yet been arraigned on the indictment.

**Defendant Thomas**

Since Defendant Thomas's arrest he has had multiple violations of his pretrial release order. Following Defendant Thomas's arraignment on the indictment on March 20, 2023, pretrial services sought to modify his conditions of release on April 19, 2023. ECF 23. Before this Court's hearing on this first violation, pretrial services noted an *additional* violation on April 28, 2023. ECF 25. This Court held hearings on Defendant Thomas's release order violations on May 1, 2023; July 3, 2023; August 18, 2023; and August 28, 2023. Defendant Thomas's release was revoked on August 28, 2023. ECF 50. At issue is whether Defendant Thomas can wait for the suggested pace for Defendant Legros's prosecution.

The constitutional right to a speedy trial has been defined more thoroughly by Congress through the Speedy Trial Act of 1974. In its current iteration, 18 U.S.C. § 3161(h) reads:

> (h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence: . . .

---

[1] Defendant Legros has a concurrent state-felony case being prosecuted by Michigan's Genesee County Prosecuting Attorney. The next hearing date for that case is October 31, 2023.

> (6) A *reasonable period* of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted.

18 U.S.C. § 3161(h)(6) (emphasis added).

In *Henderson v United States*, 476 U.S. 321 (1986), the Supreme Court noted: "All defendants who are joined for trial generally fall within the speedy trial computation of the latest codefendant." *Henderson*, 476 U.S. at 323 n. 2. Thus far, Defendant Legros has not yet been arraigned on the indictment. But the key question is the reasonableness of the delay.

In *United States v Shaw*, 510 F.Supp.2d 148 (D.D.C. 2007), Judge Sullivan outlined: "[a]lthough the D.C. Circuit has not provided a lot of insight on what it means to have the exclusion applicable to one defendant apply to all defendants, [*United States v.*] *Edwards*, 627 F.2d [460] at 461, other circuits have explored this issue in greater detail." One such example came from the Tenth Circuit in *United States v Vogl*, 374 F.3d 976 (10th Cir 2004).

In *Vogl*, the panel provided the Tenth Circuit's three factors of guidance for this reasonableness issue: "(1) whether the defendant is free on bond, (2) whether the defendant zealously pursued a speedy trial, and (3) whether the circumstances further the purpose behind the exclusion to 'accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial.'" *United States v Vogl*, 374 F.3d 976, 984 (10th Cir 2004) (quoting *United States v Olivo*, 69 F.3d 1057, 1061-62 (10th Cir 1990)).

This third factor has been further analyzed by the Tenth Circuit to note "that '[w]here the government will recite a single factual history, put on a single array of evidence, and call a single group of witnesses, a single trial is preferred.'" *Shaw*, 510 F.Supp.2d at 151. In the present case, the government will put on a single array of evidence and call a single group of witnesses, some

5

of whom are from other parts of the country. Prosecutorial resources *would* be strained if there are two separate trials.

Although a delay of trial in this case until both defendants can proceed may be permissible, the uncertainty around Defendant Legros's medical condition, and Defendant Thomas's pretrial detention counsels in favor of moving forward expeditiously in his case. The contemporaneously filed proposed schedule for pretrial litigation agreed upon by Defendant Thomas would still allow Defendant Legros sufficient time for her to prepare a defense given her target implementation date. But if not, the decision to postpone her case and set a separate trial date need not occur at this stage.

The government respectfully requests that this Court set the proposed pretrial scheduling order for Defendant Thomas and continue to monitor Defendant Legros's medical condition and, following her arraignment on the indictment, establish a schedule that balances the goal of efficiency and joint trials while also providing her sufficient time to consult with counsel and prepare her defense.

Respectfully Submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

/s/ *Adam M. Dreher*

ADAM M. DREHER
Assistant United States Attorney
MI Bar No. P79246
601 D. St. N.W.
Washington, D.C. 20530
(202) 252-1706
adam.dreher@usdoj.gov